UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

JOHNNY VELEZ-GARRIGA,                              :

                            Petitioner,       :      **MEMORANDUM DECISION**

                     - v -       :      20-cv-5911 (DC)

E. BELL, Superintendent of Clinton       :
Correctional Facility,

                                 :

                        Respondent.       :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

APPEARANCES:       JOHNNY VELEZ-GARRIGA
                         *Petitioner Pro Se*
                         DIN 15A3349
                         Shawangunk Correctional Facility
                         P.O. Box 700
                         200 Quick Road
                         Walkill, NY 12589

                         ERIC GONZALEZ, Esq.
                         District Attorney, Kings County
                         By:     Morgan J. Dennehy, Esq.
                               Assistant District Attorney
                         350 Jay Street
                         Brooklyn, NY 11201
                             Attorney for Respondent

CHIN, Circuit Judge:

               On July 29, 2015, following a jury trial, petitioner Johnny Velez-Garriga

was convicted in the Supreme Court of New York, Kings County (Firetog, *J.*), of second-

degree murder, in violation of N.Y. Penal Law § 125.25(1), and second-degree criminal

possession of a weapon, in violation of N.Y. Penal Law § 265.03(1). Dkt. 4 at 1-2. Velez-Garriga was sentenced to concurrent terms of imprisonment of twenty-five years to life on the murder count and fifteen years with five years of post-release supervision on the weapons count. *Id.* at 2. The Appellate Division, Second Department affirmed his convictions, *People v. Velez-Garriga*, 70 N.Y.S.3d 77 (2d Dep't 2018) ("*Velez-Garriga I*"), and the New York Court of Appeals denied his application for leave to appeal, *People v. Velez-Garriga*, 106 N.E.3d 765 (N.Y. 2018) (Feinman, J.) ("*Velez-Garriga II*").

On June 28, 2018, proceeding *pro se*, Velez-Garriga applied to the Appellate Division for a writ of error *coram nobis*, alleging ineffective assistance of appellate counsel for failing to raise ineffective assistance of trial counsel. Dkt. 4 at 3; Dkt. 1-7. The Appellate Division denied the application on July 24, 2019. *People v. Velez-Garriga*, 102 N.Y.S.3d 893 (2d Dep't 2019) ("*Velez-Garriga III*"). The New York Court of Appeals denied Velez-Garriga's application for leave to appeal on October 31, 2019. *People v. Velez-Garriga*, 137 N.E.3d 16 (N.Y. 2019) (DiFiore, C.J.) ("*Velez-Garriga IV*").

On December 20, 2019, proceeding *pro se*, Velez-Garriga moved for a second time in the Appellate Division for a writ of error *coram nobis*, again raising claims of ineffective assistance of appellate counsel. Dkt. 4 at 4; Dkt. 1-10. The Appellate Division denied the application on July 22, 2020, *People v. Velez-Garriga*, 125 N.Y.S.3d 889 (2d Dep't 2020) ("*Velez-Garriga V*"), and the New York Court of Appeals

denied leave to appeal on October 24, 2020, *People v. Velez-Garriga*, 158 N.E.3d 539 (N.Y. 2020) (DiFiore, *C.J.*) ("*Velez-Garriga VI*").

In papers dated November 23, 2020, and received by the Court on December 3, 2020, Velez-Garriga filed a *pro se* petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 (the "Petition") in this Court. Dkt. 1. The Petition asserts claims Velez-Garriga raised on direct appeal and in his two *coram nobis* applications. Specifically, he claims: (1) the trial court erroneously denied Velez-Garriga's motion to suppress a statement made to police; (2) the court erred by admitting evidence of phone calls that Velez-Garriga made from jail and a photograph of his tattooed hands; (3) his sentence was excessive; and (4) appellate counsel was ineffective for failing to argue that trial counsel was ineffective. *Id.* at 5-12. The Kings County District Attorney's Office opposed the Petition on January 17, 2021. Dkt. 4.

For the reasons that follow, the Petition is DENIED.

## STATEMENT OF THE CASE

### I.   *The Facts*[1]

The evidence at trial established the following:

On December 26, 2013, New York City Police Department ("NYPD") Detective Juan Creagh learned of a shooting that had occurred at approximately 9:30

---

[1]     The facts are primarily drawn from Respondent's Appellate Division brief submitted in opposition to Velez-Garriga's direct appeal. The recitation of facts in the brief is supported by detailed citations to the record. *See* Dkt. 10-1 at 46-72.

p.m. at an apartment building located at 2925 West 27th Street in Coney Island, Brooklyn. Dkt. 10-1 at 47. Detective Creagh, among others, arrived at the scene and observed the victim, a twenty-five-year-old man named Shawn White, dead and lying face up on the floor. *Id.*; Dkt. 10 at 285. Detective Creagh learned from Valeria Velez,[2] Velez-Garriga's sister and the only witness to the incident, that Velez-Garriga had shot White. Dkt. 10-1 at 47. White, a close friend of Velez-Garriga, had been romantically involved with Valeria. Dkt. 10 at 221-23.

Earlier that evening, Valeria and White ran an errand in Queens and had dinner together at an Applebee's restaurant. *Id.* at 230. The two returned to Valeria's apartment building, where she lived with Velez-Garriga in their family's apartment. White dropped something off on a higher floor while Valeria held the elevator open. *Id.* at 230-31. Valeria and White then took the elevator down to the fourth floor, where they saw Velez-Garriga leaving the family's apartment. *Id.* at 231. According to Valeria's testimony at trial, White indicated that he wanted to speak with Velez-Garriga. *Id.* at 232. White said, "You know I love you and I would never disrespect you or your sister," and put his hand out for a handshake. *Id.* at 232. Velez-Garriga, who seemed "like he had something to do," responded "We'll talk later. I can't do this right now." *Id.* at 232. Once Velez-Garriga left, Valeria asked White "what that was about," to which White responded that he did not know, but that "he assumed [Velez-Garriga] was hurt

---

[2] For clarity, the Court will refer to Valeria Velez by her first name.

4

because [he] thought [White and Valeria] were together." *Id.* at 233.  Valeria testified

that White seemed "upset" and "hurt" but not "angry." *Id.*  White and Valeria decided to

part ways for the night. *Id.*

   While they were still standing by the elevator bank in the hallway, White

and Valeria saw Velez-Garriga coming back toward them, walking at a pace "just a little

faster than normal." *Id.* at 234.  There was no one else in the hallway. *Id.* at 237-38.

Velez-Garriga approached with his arm "at a 90-degree angle to the floor," while

holding "a black object" that appeared to be a gun. *Id.* at 234-35.  Valeria and White

were standing at a slight diagonal to each other, with White behind Valeria. *Id.* at 235.

While approaching White -- and passing Valeria by -- with the object in his hand, Velez-

Garriga said, "You violated me, bitch." *Id.*  As Velez-Garriga passed her, Valeria heard

"five or six" gunshots. *Id.* at 236.

   After Valeria did not hear any more shooting, she turned around to see

what had happened. *Id.* at 237.  Finding no one in the hallway, she went to the

stairwell, which was about two steps around the corner from the elevator bank. *Id.*[3]

She opened the door to the stairwell and found White "laying on the floor . . . facedown

---

[3] Testimony of the medical examiner who performed White's autopsy revealed that the entrance
and exit wounds on White's body were "consistent with someone turning as they're being shot."
Dkt. 10 at 351.  This fact, together with Valeria's testimony and photographic evidence of the
proximity between the hallway and the stairwell, *see id.* at 242-248, suggests that Velez-Garriga
chased White while shooting him, and that White was able to run to the stairway where he
collapsed.  *See id.* at 243-44.  There was no video surveillance footage of the hallway or stairwell.
*Id.* at 309-10.

in a puddle of blood." *Id.*  Valeria immediately called 911.  *Id.*  At some point while

Valeria was in the stairwell, a man that Valeria did not know came to help her turn

White over onto his back, because Valeria "didn't want him to suffocate on [his blood]."

*Id.* at 240.

    The police arrived at the scene and took Valeria -- who was "devastated,"

"vomiting," and feeling "anxious, scared, [and] hurt" -- into her apartment.  *Id.* at 249.

She called Ebony Miller, Velez-Garriga's girlfriend and her close friend, to come over.

*Id.* at 250.  Miller and her mother came over once Valeria explained what was

happening.  *Id.* at 250-51.  Valeria cooperated with law enforcement and provided them

with Velez-Garriga's cell phone number.  *Id.* at 251.

    Detective Creagh used Velez-Garriga's cell phone number to trace his cell

phone coordinates to a location in Pennsylvania.  Dkt. 10-1 at 47.  On December 30,

2013, Detective Creagh, dressed in plain clothes and with a warrant, apprehended

Velez-Garriga in Philadelphia.  *Id.*  Detective Creagh led Velez-Garriga into an

unmarked car along with two homicide detectives.  *Id.* at 48.  Detective Creagh told

Velez-Garriga that the officers were going to take him to the state barracks in New

York.  *Id.* at 47.

    During the ride to New York, without any apparent prompting by the law

enforcement officers, Velez-Garriga "mumbled" "I wish I could take it back.  I know I'm

going in for life." *Id.* at 48.  According to Detective Creagh's trial testimony, none of the detectives responded to this statement.  *Id.*

Around thirty minutes after arriving at the barracks, Detective Creagh began reading Velez-Garriga his *Miranda* rights.  *Id.*  But Velez-Garriga then "interrupted," telling the detectives that he had a lawyer and that he did not wish to speak.  Dkt. 10-1 at 48.  Velez-Garriga then stated, again with no apparent prompting by law enforcement, "Maybe I smoked bad weed or something."  *Id.*

## II.      *The State Court Proceedings*

### a.       *The Indictment and Pre-Trial Proceedings*

Velez-Garriga was indicted in Kings County for one count of second-degree murder, two counts of second-degree criminal possession of a weapon, and one count of second-degree menacing.  Dkt. 4 at 1.  Velez-Garriga was arraigned on January 21, 2014.  Dkt. 10-1 at 50.

On June 11, 2015, the trial court held a pre-trial suppression hearing (the "*Huntley*" hearing) as to Velez-Garriga's statements to police.  Dkt. 10 at 2-46. Specifically, the prosecution sought to introduce Velez-Garriga's statement in the car ("I wish I could take it back.  I know I'm going in for life.") and his statement about marijuana ("Maybe I smoked some bad weed or something.").  *Id.* at 3-4, 308.

The parties first disputed the issue of notice to defense counsel about the introduction of the statements.  *Id.* at 1-9.  The prosecution served notice of the "bad

7

weed" statement on January 27, 2014, making that notice timely because it was filed within 15 days of Velez-Garriga's January 21, 2014 arraignment.  *Id.* at 5; *see* New York Criminal Procedure Law ("CPL") § 710.30 (notice of intent to offer certain suppressible statements "must be served within fifteen days after arraignment and before trial").  The prosecution served notice of the "going in for life" statement on February 11, 2014, more than fifteen days after Velez-Garriga's arraignment.  Dkt. 10 at 6.  The prosecutor requested that the trial court allow the late statement despite the deficient notice because of the "extenuating circumstances" of the previous district attorney's illness and death.  *Id.* at 22.

The trial court excluded the "I'm going in for life" statement because of the late notice but held that if Velez-Garriga testified at trial, the prosecution would be permitted to question him about the statement.  *Id.* at 24-25.  The court allowed the prosecution to introduce the "bad weed" statement "based upon the credible testimony of Detective [] Creagh," who testified at the suppression hearing.  *Id.* at 24.  In allowing the "bad weed" statement, the court found that Velez-Garriga made the statement "spontaneous[ly]" and "not as the result of any interrogation."  *Id.*

At the same hearing, the prosecutor expressed concern that, to bolster a misidentification defense, defense counsel would rely on a 911 call made by a resident of the building on the night of the shooting.  *Id.* at 29.  The caller told the operator, "through the peephole, we saw a male black, with a gray sweater and a black du-rag,

run by." *Id.* Velez-Garriga is not Black. Dkt. 10-2 at 17.  The prosecution spoke with the

caller and his wife, who said that he was relaying information from his wife, who was

at the peephole. *Id.* The wife stated that she had "no idea why her husband would have

said male black" given that she saw "a light-skinned male Hispanic, with braids, and a

black du-rag." *Id.* She later gave the same description to police. *Id.* Defense counsel

had "nothing to add" to the prosecutor's representation. *Id.*

       The court also addressed the prosecution's motion to introduce portions of

(1) Valeria's 911 call; and (2) Velez-Garriga's telephone calls from Rikers. Dkt. 10 at 32.

The trial court ruled that the phone call was admissible because of the fact that it was

made by the only eyewitness to the shooting and it tended to, *inter alia*, "corroborate

[Valeria's] presence at the scene." *Id.* at 34.

       The prosecution sought to introduce portions of Velez-Garriga's phone

calls from Rikers to show his consciousness of guilt. *Id.* at 35.  In the first set of calls,

made on January 27, 2014, and February 4, 2014, Velez-Garriga spoke to Ebony Miller

(the mother of his children) and an unnamed friend, respectively. *Id.* at 36; Dkt. 10-1 at

51.  Velez-Garriga was speculating to Ebony about the amount of time he would have to

serve, Dkt. 10-1 at 51, and told the friend, "I got caught.  I got to do this time, boy. . . .

I'm looking at 25 and shit." Dkt. 10 at 37.  The court, finding that the calls showed

consciousness of guilt, ruled that set of excerpts admissible. *Id.* at 38.  The court

reserved judgment on a second set of calls that the prosecution intended to introduce to

show that Velez-Garriga was attempting to influence his sister into not testifying.  Dkt. 10-1 at 45.

### b.    *The Trial*

Trial began on June 16, 2015.  Dkt. 10 at 193.  The jury heard testimony from Anesta White, White's mother, *id.* at 211-13; Valeria, Velez-Garriga's sister and the only eyewitness to White's murder, *id.* at 213-72; Officer Michael Santaniello, an officer who responded to a radio call for shots fired the night of December 26, 2013, *id.* at 276-88; Detective Juan Creagh, the lead detective on the case, *id.* at 288-319; Detective Robert Liguori, a firearms and ballistics examiner at the NYPD, who testified as an expert witness, *id.* at 323-34; Dr. Kathleen McCubbin, a City Medical Examiner with the Office of the Chief Medical Examiner for the City of New York, who conducted an autopsy on White's body and who testified as an expert witness, *id.* at 334-69; Detective Christopher Florio, a detective in the Crime Scene Unit within the NYPD's forensic investigation division, *id.* at 378-94; Sergeant Diana Pichardo, who responded to a radio call on the night of the murder, *id.* at 394-403; Detective John Fogelman, an investigator within the warrant section of the NYPD, who assisted in apprehending Velez-Garriga in Pennsylvania, *id.* at 403-12; and Tarsha Brown, an investigator with the Department of Corrections responsible for retrieving inmate telephone calls and testifying in court about the process, *id.* at 413-30.

The prosecution rested on June 17, 2015 after one day of presenting evidence. *Id.* at 373, 432. Velez-Garriga did not testify or put on a defense. *Id.* at 433. Following the conclusion of the prosecution's case and after announcing the defense was resting, defense counsel moved to dismiss, and the court denied the motions. *Id.* at 434.

On June 18, 2015, the jury found Velez-Garriga guilty of second-degree murder and second-degree criminal possession of a weapon. *Id.* at 507-08.

### c.  *The Sentencing Hearing*

On July 29, 2015, the trial court sentenced Velez-Garriga. *Id.* at 522. The trial court first addressed a predicate felony statement filed by the prosecution, alleging that Velez-Garriga was a second felony offender based on a prior conviction of third-degree criminal sale of a controlled substance in 2010. *Id.* at 524. Velez-Garriga admitted that he was convicted of that felony. *Id.* The court subsequently adjudicated Velez-Garriga as a predicate felon. *Id.* at 525.

Two members of White's family -- his mother and grandmother -- made statements at sentencing. *Id.* at 527-33. The trial court sentenced Velez-Garriga to fifteen years' imprisonment with a five-year term of post-release supervision on the weapons charge. *Id.* at 533. The court sentenced him to twenty-five years' to life imprisonment on the second-degree murder charge. *Id.* The court ordered the sentences to run concurrently. *Id.*

11

### d. *Direct Appeal*

Velez-Garriga appealed his convictions to the Appellate Division, Second Department, asserting the following claims:  (1) the district court erred by denying Velez-Garriga's motion to suppress his statement made to police; (2) the court erred by admitting evidence of his phone calls from Rikers and a photograph of his tattooed hands; and (3) his sentence was excessive.  Dkt. 1-3 at 6; Dkt. 4 at 2.

On March 21, 2018, the Appellate Division affirmed Velez-Garriga's convictions.  *See Velez-Garriga I,* 70 N.Y.S.3d at 78.  The Appellate Division held that the district court properly denied Velez-Garriga's motion to suppress the statement he made to police because, although his "indelible right to counsel had attached, [his] statement was spontaneous and not the result of any improper police conduct or questioning."  *Id.*  The Appellate Division found that Velez-Garriga's claim that the district court erroneously admitted evidence of his Rikers calls was "only partially preserved for appellate review" under CPL § 470.05(2), and in any event, the district court "providently exercised its discretion in admitting [the] evidence as proof of consciousness of guilt."  *Id.*

As to Velez-Garriga's contention that the district court also improperly admitted a photograph of his tattooed hands, the Appellate Division held that that claim was "unpreserved for appellate review" under CPL § 470.05(2), and that it lacked merit in any case because, even if the admission was improper, "it did not deprive

[Velez-Garriga] of a fair trial, and any other error in this regard was harmless." *Id.*

Finally, the appellate court found that Velez-Garriga's sentence was not excessive. *Id.*

On June 28, 2018, the New York Court of Appeals (Feinman, J.) denied

leave to appeal. *See Velez-Garriga II*, 106 N.E.3d at 765.

### e. *The* **Coram Nobis** *Applications*

On January 8, 2019, Velez-Garriga moved *pro se* in the Appellate Division,

Second Department for a writ of error *coram nobis*. Dkt. 1-7. Velez-Garriga claimed that

appellate counsel was ineffective for failing to assert, on appeal, a claim that trial

counsel was ineffective because he did not investigate a potentially exculpatory 911 call

that the prosecution disclosed during discovery. *Id.* at 7-8. Velez-Garriga claimed that

the 911 call would have supported an argument that, contrary to Valeria's testimony,

someone else murdered White. *Id.* at 9. Defendant's appellate counsel, Denise Corsi,

filed an affirmation in the Appellate Division on June 1, 2019, explaining that she did

not raise ineffective assistance of trial counsel on appeal because "that claim necessarily

involved facts outside of the record, and thus could not properly be raised on direct

appeal." Dkt. 4 at 3.

On July 24, 2019, the Appellate Division denied the application, finding

that Velez-Garriga failed to establish that appellate counsel was ineffective. *Velez-

Garriga III*, 102 N.Y.S.3d at 893. On October 31, 2019, the Court of Appeals (DiFiore,

C.J.) denied leave to appeal. *Velez-Garriga IV*, 137 N.E.3d at 16.

On December 20, 2019, Velez-Garriga again moved *pro se* in the Appellate Division for a writ of error *coram nobis*. Dkt. 10-3. Velez-Garriga again claimed ineffective assistance of appellate counsel based on counsel's failure to raise ineffective assistance of trial counsel on appeal. *Id.* at 4. This time, however, Velez-Garriga claimed that trial counsel was ineffective because he failed to pursue a defense of extreme emotional disturbance, which could have resulted in a lesser conviction of manslaughter. *Id.* at 12-13. Velez-Garriga also claimed that appellate counsel failed to adequately investigate trial counsel's failure to use the allegedly exculpatory 911 call as well as a "prejudicial comment" that the trial court made regarding Velez-Garriga's guilt. *Id.* at 4.

Appellate counsel once again submitted an affirmation to the Appellate Division in response to Velez-Garriga's claims. *Id.* at 17. The affirmation reiterated her reasons for not pursuing an argument about the 911 call. *Id.* at 19-20. She also affirmed that while she had investigated raising a claim based on the trial court's allegedly prejudicial comment, that comment was made off the record, and it similarly would have been beyond the scope of appeal. Dkt. 4 at 4. Finally, appellate counsel stated that an ineffective assistance of counsel claim based on the failure to pursue an extreme emotional disturbance defense would not have been viable in light of the trial evidence, and trial counsel had stated on the record that, after conferring with Velez-Garriga, he would not be asking for inclusion of a manslaughter charge. *Id.*

14

On July 22, 2020, the Appellate Division denied Velez-Garriga's second motion for a writ of error *coram nobis*, finding that Velez-Garriga failed to establish that appellate counsel was ineffective. *Velez-Garriga V*, 125 N.Y.S.3d at 889. On October 24, 2020, the Court of Appeals (DiFiore, *C.J.*) denied leave to appeal. *Velez-Garriga VI*, 158 N.E.3d at 539.

III.    *The Petition*

The Petition was received by this Court on December 3, 2020. Dkt. 1. Respondent filed its opposition on January 27, 2021. Dkt. 4.

In papers dated March 24, 2021 and received by this Court on March 29, 2021, Velez-Garriga moved for (1) stay and abeyance, (2) an evidentiary hearing and expansion of the record, and (3) leave to amend his Petition. Dkt. 6. Respondent opposed the motion for a stay on October 12, 2021. Dkt. 8. By memorandum and order filed on April 5, 2022, this Court (Komitee, *J.*) denied Velez-Garriga's motions. Dkt. 9.

On October 25, 2023, the case was reassigned to the undersigned.

## DISCUSSION

I.    *Federal Review of State Convictions*

A federal court may not grant a habeas petition on a claim that was adjudicated on the merits in state court unless that adjudication:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

15

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d); *see Harrington v. Richter*, 562 U.S. 86, 97-98 (2011); *Waiters v. Lee*, 857

F.3d 466, 477 (2d Cir. 2017).  Hence, when a claim is adjudicated on the merits, the state

court's decision must be accorded "substantial deference."  *Fischer v. Smith*, 780 F.3d 556,

560 (2d Cir. 2015).  "A federal court may reverse a state court ruling only where it was

'so lacking in justification that there was . . . [no] possibility for fairminded

disagreement.'"  *Vega v. Walsh*, 669 F.3d 123, 126 (2d Cir. 2012) (per curiam) (quoting

*Harrington*, 562 U.S. at 103); *see also Wetzel v. Lambert*, 565 U.S. 520, 524 (2012) (per

curiam).

Moreover, "federal courts will not review questions of federal law

presented in a habeas petition when the state court's decision rests upon a state-law

ground that is independent of the federal question and adequate to support the

judgment."  *Cone v. Bell*, 556 U.S. 449, 465 (2009) (quoting *Coleman v. Thompson*, 501 U.S.

722, 729 (1991)).  In other words, if the state court refused to consider an argument

because it was procedurally barred under state law, the argument is barred from federal

habeas review so long as the procedural bar is "adequate to support the judgment."

*Murden v. Artuz*, 497 F.3d 178, 191-92 (2d Cir. 2007).  A petitioner's failure to comply

with a state procedural rule qualifies as such an adequate and independent state

ground, provided that (i) the state court actually "relied on the procedural bar as an

16

independent basis for its disposition of the case," *Harris v. Reed*, 489 U.S. 255, 261-62 (1989) (internal quotation marks and citation omitted), and (ii) the state procedural rule is "firmly established and regularly followed," *James v. Kentucky*, 466 U.S. 341, 348 (1984).

## II.    *Analysis*

In his Petition, Velez-Garriga asserts claims raised in his direct appeal and in his motions for a writ of error *coram nobis*.  He contends that:  (1) the trial court erroneously denied Velez-Garriga's motion to suppress a statement made to police; (2) the court erred by admitting evidence of phone calls that Velez-Garriga made from jail and a photograph of his tattooed hands; (3) his sentence was excessive; and (4) appellate counsel was ineffective for failing to argue that trial counsel was ineffective. Dkt. 1 at 5-12.

I address the claims in turn.

### A.    *The "Bad Weed" Statement Claim*

First, Velez-Garriga argues that the trial court improperly admitted evidence of his "bad weed" statement in violation of his constitutional right to counsel. *Id.* at 5.  Velez-Garriga raised this argument on direct appeal, *see* Dkt. 1-3 at 23-31, and the Appellate Division rejected the argument on the merits.  *Velez-Garriga I*, 70 N.Y.S.3d at 78.  Accordingly, because the appellate court adjudicated the claim on the merits, this Court must accord the state court's decision "substantial deference," *Fischer*, 780 F.3d at

17

560, and will only grant habeas relief if the state court's decision was "contrary to, or involved an unreasonable application of, clearly established Federal law," *Harrington*, 562 U.S. at 98.

The Appellate Division's decision that Velez-Garriga's statements were properly admitted is a reasonable application of federal law. Velez-Garriga's argument on direct appeal was that because the officer was in the middle of giving Velez-Garriga his *Miranda* warnings, the statement that "Maybe I smoked some bad weed" was not spontaneous but was, in essence, the product of interrogation. Dkt. 1-3 at 27. Trial counsel lodged the same argument at the pre-trial *Huntley* hearing, Dkt. 10 at 19, but moments later conceded that Velez-Garriga was not interrogated when he made the statement. *Id.* at 20 (THE COURT: The question was, was he being interrogated? MR. CERBIN: No, not based on the testimony."). Both parties agreed that Velez-Garriga's right to counsel had indelibly attached, and so the only question is whether Velez-Garriga was subject to interrogation. *Id.* at 19.

For purposes of *Miranda*, an interrogation occurs when a suspect "is subjected to either express questioning or its functional equivalent" and his statements are "the product of words or actions on the part of the police" that "were reasonably likely to elicit an incriminating response." *United States v. Familetti*, 878 F.3d 53, 57 (2d Cir. 2017) (quoting *Rhode Island v. Innis*, 466 U.S. 291, 300-01, 303 (1980)); *accord People v. Gonzales*, 554 N.E.2d 1269, 1270 (N.Y. 1990). Volunteered information or spontaneous

18

statements, even if made when an individual is in custody, do not implicate *Miranda*. *Innis*, 446 U.S. at 301.

Here, Velez-Garriga was not interrogated within the meaning of *Miranda* when he stated, unprompted, "Maybe I smoked some bad weed or something." Velez-Garriga "spontaneously began" to make the statement after Detective Creagh had apprised him of his right to remain silent. *People v. Kaye*, 250 N.E.2d 329, 332 (N.Y. 1969). Nothing that law enforcement said to Velez-Garriga during this exchange could reasonably be construed as "likely to elicit an incriminating response," *Familetti*, 878 F.3d at 57.

In any event, any constitutional error in admitting the "bad weed" statement was harmless, because Velez-Garriga cannot show that its introduction at trial resulted in "actual prejudice," *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993). On appeal, he argued that the statement was prejudicial because the prosecution relied on it during summation to support an inference of guilt. Dkt. 1-3 at 24. But in light of the "overwhelming evidence of guilt," any error was harmless. *People v. Isasi*, 697 N.Y.S.2d 297, 298 (2d Dep't 1999). Accordingly, and because the Appellate Division's dismissal of this argument as meritless was reasonable, habeas relief is unavailable on this ground.

**B.    *The Rikers Phone Calls Claim***

Next, Velez-Garriga contends that the trial court erred by admitting excerpts of numerous phone calls he made at Rikers Island, thereby depriving him of a

fair trial. Dkt. 1 at 7. The Appellate Division considered the claim on direct appeal and found that the issue had only been "partially preserved" for appellate review under CPL § 470.05(2). In its brief on appeal, the prosecution argued that defense counsel failed to preserve the issue because counsel "objected to the admission of the calls on grounds different than those that were asserted on appeal." Dkt. 4 at 17 n.2. During the *Huntley* hearing, defense counsel objected to the excerpts because they were not probative of Velez-Garriga's consciousness of guilt. Dkt. 10 at 33-44. At trial, counsel did not object when the prosecutor played the excerpts. *Id.* at 426, 429.

   The Second Circuit has "held repeatedly that the contemporaneous objection rule" -- that state appellate courts will review only those errors of law that are presented contemporaneously such that the trial court is "reasonably prompted" to correct them -- "is a firmly established and regularly followed New York procedural rule." *Downs v. Lape*, 657 F.3d 97, 103-04 (2d Cir. 2011) (citations omitted).

   Hence, the Circuit has affirmed the denial of habeas relief based on the Appellate Division's ruling that the failure of a petitioner to object at trial rendered a claim unpreserved for appellate review. *See, e.g., Garcia v. Lewis*, 188 F.3d 71, 81-82 (2d Cir. 1999) (affirming denial of habeas relief where petitioner's trial counsel failed to bring to trial court's attention a claim that he later attempted to advance on appeal). If a claim is procedurally barred pursuant to an independent and adequate state rule, a federal habeas court may not review it on the merits, unless the petitioner demonstrates

(1) "cause for the default and actual prejudice as a result of the alleged violation of federal law," or (2) "that failure to consider the claims will result in a fundamental miscarriage of justice." *Coleman v. Thompson*, 501 U.S. at 750.

Habeas relief is thus not available to Velez-Garriga for his Rikers phone call claim. For an independent and adequate state ground to bar habeas relief, the state court rendering the judgment must "clearly and expressly" state that its judgment rests upon a state procedural bar. *Whitley v. Ercole*, 642 F.3d 278, 286 (2d Cir. 2011) (citation omitted). Here, the Appellate Division clearly and expressly stated that Velez-Garriga's phone call claim was at least partially procedurally barred by CPL § 470.05(2).

Moreover, Velez-Garriga has failed to demonstrate that he is entitled to an exception to the procedural default rule, because he has not shown either (1) cause and actual prejudice or (2) that a fundamental miscarriage of justice would occur if the merits of the federal claim were not considered. *See Edwards v. Carpenter*, 529 U.S. 446, 451 (2000) (citation omitted); *Carvajal v. Artus*, 633 F.3d 95, 104 (2d Cir. 2011).

Velez-Garriga's phone call claim fails on the merits in any event. Purported evidentiary errors in a state court trial are rarely a basis for habeas relief. The Supreme Court has acknowledged its "traditional reluctance to impose constitutional constraints on ordinary evidentiary rulings by state trial courts." *Crane v. Kentucky*, 476 U.S. 683, 689 (1986). As trial judges are "called upon to make dozens, sometimes hundreds, of decisions concerning the admissibility of evidence" in any

given criminal trial, "the Constitution leaves to the judges who must make these decisions 'wide latitude'" in ruling on the admissibility of evidence. *Id.* at 689-90 (citation omitted).

Consequently, "[e]rroneous evidentiary rulings do not automatically rise to the level of constitutional error sufficient to warrant issuance of a writ of habeas corpus. Rather, the writ would issue *only* where petitioner can show that the error deprived [him] of a *fundamentally fair* trial." *Taylor v. Curry*, 708 F.2d 886, 891 (2d Cir. 1983) (citations omitted). The erroneous admission of evidence constitutes a denial of due process "only if the evidence in question 'was sufficiently material to provide the basis for conviction or to remove a reasonable doubt that would have existed on the record without it.'" *Johnson v. Ross*, 955 F.2d 178, 181 (2d Cir. 1992) (citation omitted).

Here, the trial court acted within its discretion to admit Velez-Garriga's phone calls from Rikers -- wherein he acknowledged that he "got caught," and would have to "do this time" -- because those statements were certainly probative of his consciousness of guilt. *See People v. Case*, 979 N.Y.S.2d 383, 385 (2d Dep't 2014) (noting that "[e]ven equivocal consciousness-of-guilt evidence may be admissible so long as it is relevant, meaning that it has a tendency to establish . . . that [the] defendant was aware of guilt"). There was no error, much less constitutional error that would warrant federal habeas relief. For these reasons, Velez-Garriga is not entitled to habeas relief on his claim pertaining to the Rikers phone calls.

C.     *The Tattooed Hands Photograph Claim*

Velez-Garriga also contends that the district court deprived him of a fair

trial by admitting a photograph of his tattooed hands at trial. Dkt. 1 at 7.  The Appellate

Division considered the claim on direct appeal and concluded that CPL § 470.05(2)

presented a complete procedural bar because he failed to preserve his challenges to the

photograph for appellate review. *See Velez-Garriga I,* 70 N.Y.S.3d at 78.  The Appellate

Division further noted, however, that Velez-Garriga's contentions with respect to the

photograph were without merit. *See id.*

Thus, for the same reasons explained above as to the phone call claim,

Velez-Garriga is not entitled to habeas relief on the tattoo photograph claim.  The

Appellate Division "clearly and expressly" stated that the tattoo photograph claim was

procedurally barred by CPL § 470.05(2). *Whitley,* 642 F.3d at 286 (citation omitted).

Velez-Garriga has also not shown cause or prejudice.

Velez-Garriga's claim fails on the merits in any event, for the same reasons

that the phone calls claim also failed.  Velez-Garriga argued on appeal that admitting

evidence of his tattooed hands was overly prejudicial. Dkt. 1-3 at 31.  The prosecution

introduced the photo of Velez-Garriga's tattooed hands at trial for the limited purpose

of identification.  One tattoo was text that read "Bravo," which is the nickname that

many of Velez-Garriga's family and friends called him.  The trial court acted within its

broad discretion to admit evidence of his tattoo because it was relevant to the jury's

23

understanding of Velez-Garriga's identity and nickname, and any prejudice to Velez-Garriga did not rise to the level of depriving him of a "fundamentally fair trial," *Taylor*, 708 F.2d at 891; *see also United States v. Pierce*, 785 F.3d 832, 841 (2d Cir. 2015) ("[Evidence of] tattoos [is] properly admitted, however, where they are relevant and their probative value is not substantially outweighed by the danger of unfair prejudice."); *accord People v. Chacon*, 201 N.Y.S.3d 15, 17 (2d Dep't 2023) (rejecting defendant's argument that photographic evidence of his tattoos implicated his constitutional rights where tattoos helped to identify defendant, and jury had an opportunity to observe defendant and his tattoos).   Accordingly, habeas relief is unavailable on this claim.

### D.    The "Cruel and Inhuman Punishment" Claim

Velez-Garriga also challenges his sentence in his Petition, claiming that "given [his] youth, lack of significant criminal history, and other factors," his sentence constitutes "cruel and inhuman punishment."  Dkt. 1 at 8.  To the extent that Velez-Garriga raises a federal constitutional claim that his sentence constitutes cruel and unusual punishment in violation of the Eighth Amendment, the claim is unexhausted and procedurally barred.  To the extent that Velez-Garriga asserts an excessive sentence claim under state law, that claim does not present a federal question for this Court's review.

If Velez-Garriga intends, by raising a "cruel and inhuman punishment" claim in his Petition, to assert a federal constitutional claim, that claim is unexhausted

and procedurally barred because he never raised an Eighth Amendment claim in state court. Dkt. 4 at 23. Moreover, the Court may deny an unexhausted claim on the merits notwithstanding the petitioner's failure to exhaust if the unexhausted claim is "plainly meritless." *Oritz v. Heath*, No. 10-cv-1492 (KAM), 2011 WL 1331509 at *14 (E.D.N.Y. April 6, 2011) (citing 28 U.S.C. § 2254(b)(2); *Rhines v. Weber*, 544 U.S. 269, 277 (2005)). Any federal constitutional challenge to Velez-Garriga's sentence, though unexhausted, is plainly meritless.

If, on the other hand, Velez-Garriga intends to assert an "excessive sentence" claim in his Petition, that claim does not present a federal question for this Court's review. The Appellate Division considered the claim on the merits and rejected it, concluding that "[t]he sentence imposed was not excessive." *Velez-Garriga I*, 70 N.Y.S.3d at 78. "No federal constitutional issue is presented where . . . the sentence is within the range prescribed by state law." *White v. Keane*, 969 F.2d 1381, 1383 (2d Cir. 1992); *see also Fielding v. LeFevre*, 548 F.2d 1102, 1108 (2d Cir. 1977) ("Essentially, [defendant] asks this Court to review a sentence handed down by a state court, which we are powerless to do.").

Velez-Garriga was convicted of one count of second-degree murder in violation of New York Penal Law § 125.25(1), *see* Dkt. 4 at 1-2, a Class A-I felony, *see* N.Y. Penal Law § 125.25(1) ("Murder in the second degree is a class A-I felony."), and one count of second-degree criminal possession of a weapon in violation of New York

25

Penal Law § 265.03(1), a Class C felony, *see* N.Y. Penal Law § 265.03(1) ("Criminal

possession of a weapon in the second degree is a class C felony.").  The sentence for a

class A-I felony under New York law must be a minimum of fifteen years, with a

maximum term of life imprisonment.  *See* N.Y. Penal Law § 70.00.  The sentence for a

class C felony under New York law must be a minimum of one year and a maximum of

fifteen years.  *See* N.Y. Penal Law § 70.00.  And finally, because the trial court

adjudicated Velez-Garriga a second felony offender, the court was required to impose

an indeterminate sentence of imprisonment.  N.Y. Penal Law § 70.06.  In light of the

foregoing statutory sentencing framework, Velez-Garriga's sentence of twenty-five

years' to life imprisonment on the second-degree murder count and fifteen years'

imprisonment on the second-degree weapons count was within the range permitted

(and indeed, required) by New York law, and thus there is no federal constitutional

issue before this Court.

### E.     *The Ineffective Assistance of Appellate Counsel Claim*

Finally, Velez-Garriga argues that appellate counsel was ineffective for

failing to argue that trial counsel was ineffective.  Dkt. 1 at 9-11.[4]  The Appellate

Division considered and rejected these claims on the merits in denying Velez-Garriga's

---

[4] Velez-Garriga also argues that appellate counsel was ineffective for failing to pursue a CPL § 440.10 motion on his behalf.  Dkt. 1 at 11.  But as Respondent points out, appellate counsel's representation was limited to Velez-Garriga's direct appeal.  Dkt. 4 at 30.  In any event, appellate counsel determined that she could not raise an unpreserved claim in the motion, and thus determined that she could not bring the motion.  Dkt. 10-3 at 49.

two *coram nobis* applications.  *See Velez-Garriga III*, 102 N.Y.S.3d at 893; *Velez-Garriga V*, 125 N.Y.S.3d at 889.

In general, to prevail on a claim of ineffective assistance under federal law, a petitioner must (1) show that counsel's performance was so deficient as to fall below "an objective standard of reasonableness"; and (2) establish prejudice by demonstrating a "reasonable probability" that, "but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland v. Washington*, 466 U.S. 668, 688, 694 (1984).  In the context of a habeas petition under 28 U.S.C. § 2254, "[e]stablishing that a state court's application of *Strickland* was unreasonable . . . is all the more difficult.  The standards created by *Strickland* and § 2254(d) are both 'highly deferential,' . . . and when the two apply in tandem, review is 'doubly' so." *Harrington*, 562 U.S. at 105 (collecting cases).  Therefore, "[t]he operative question" when a federal court reviews a state court's ineffective assistance of counsel ruling is "not whether [the] federal court believes the state court's determination was incorrect, but rather whether that determination was objectively unreasonable . . . ." *Waiters*, 857 F.3d at 478 (alterations adopted) (quoting *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007)).

The standard to establish an ineffective assistance of counsel claim under New York law is lower than under federal law.  *See People v. Honghirun*, 78 N.E.3d 804, 807 (N.Y. 2017).  In New York, a defendant must show only "that counsel failed to provide meaningful representation . . . ." *People v. Alvarez*, 125 N.E.3d 117, 120 (N.Y.

2019) (citing *People v. Stultz*, 810 N.E.2d 883 (N.Y. 2004); *People v. Baldi*, 429 N.E.2d 400 (N.Y. 1981)).  Under state law, appellate attorneys have wide discretion to decide which issues to raise on appeal, and "[e]ffective appellate representation by no means requires counsel to brief or argue every issue that may have merit." *Stultz*, 810 N.E.2d at 888. Unlike the federal standard, *see Strickland*, 466 U.S. at 694, under the state standard, the defendant is not required to demonstrate that he was prejudiced by the ineffective assistance.  *See Alvarez*, 125 N.E.3d at 120.  Instead, the focus is "on the fairness of the proceedings as a whole." *Stultz*, 810 N.E.2d at 888.

Because the Appellate Division ruled on the ineffective assistance claim on the merits, our review is "doubly" deferential. *Harrington*, 562 U.S. at 105.  Velez-Garriga has failed to overcome his substantial burden, at this stage, of proving that appellate counsel rendered ineffective assistance.  In essence, Velez-Garriga maintains that appellate counsel was ineffective for failing to argue that trial counsel was ineffective.  Velez-Garriga contends that trial counsel failed to (1) investigate an allegedly exculpatory 911 call identifying someone else as the shooter, (2) pursue a defense of extreme emotional defense, and (3) investigate an off-the-record and allegedly prejudicial comment made by the trial judge.  All of these arguments are without merit, for the reasons explained below.

Appellate counsel did not raise ineffective assistance of trial counsel stemming from trial counsel's purported failure to investigate the above three claims

because the investigation of that claim would have involved off-the-record facts and would have been unreviewable on direct appeal. *See People v. Encarnacion*, 926 N.Y.S.2d 446, 457 (1st Dep't 2011) ("The ineffective assistance of counsel claim is unreviewable on direct appeal because it cannot be determined on the existing record whether counsel's [failure to pursue] the issue was an oversight or a deliberate strategic choice . . . ."). For instance, the trial record did not reveal (1) whether and to what extent trial counsel investigated the 911 call, (2) if he had not, his reasons for not doing so, or (3) what "defense-favorable information an investigation would have yielded." Dkt. 10-2 at 18. The same is true for trial counsel's alleged failure to pursue an extreme emotional disturbance defense, or a claim about the trial judge's allegedly prejudicial remark, both of which would have involved off-the-record facts about defense counsel's conversations with Velez-Garriga and counsel's strategy. Accordingly, Velez-Garriga cannot show that appellate counsel was ineffective for failing to raise these claims on appeal, and habeas relief on this ground must be denied.

### CONCLUSION

Velez-Garriga has failed to show any basis for relief under 28 U.S.C. § 2254. Accordingly, the Petition is denied. Additionally, I decline to issue a certificate of appealability because Velez-Garriga has not made a substantial showing of the denial of a constitutional right. *See* 28 U.S.C. § 2253. Pursuant to 28 U.S.C. §

1915(a)(3), I certify that any appeal taken from this decision and order would not be

taken in good faith.

The Clerk of Court is respectfully directed to mail a copy of this

memorandum decision and the judgment to Velez-Garriga at his last address of record.

SO ORDERED.

Dated:      New York, New York
            February 23, 2024

DENNY CHIN
United States Circuit Judge
Sitting By Designation